UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| ANTHONY D. ORR, | : | |
| --- | --- | --- |
| Plaintiff, | : | CASE NO. 3:18-CV-1908 (MPS) |
| | : | |
| v. | : | |
| | : | |
| LIEUTENANT MARQUIS, | : | |
| Defendants. | : | January 10, 2019 |

## INITIAL REVIEW ORDER

On November 26, 2018, the plaintiff, Anthony D. Orr, a *pro se* inmate currently confined at the Cheshire Correctional Institution ("Cheshire") in Connecticut, brought a civil rights action under 42 U.S.C. § 1983 against six Department of Correction ("DOC") officials: Lieutenant Marquis, Correction Officer John Doe 1, Correction Officer John Doe 2, Nurse Jane Doe, Warden Erfe, and Correction Officer Rodriguez. Compl. (ECF No. 1) at 1-2. The plaintiff seeks monetary and injunctive relief against the defendants for subjecting him to cruel and unusual punishment under the Eighth Amendment to the United States Constitution. *Id.* at 14-15. For the following reasons, the complaint is dismissed in part.

I.     Standard of Review

Under 28 U.S.C. § 1915A, the Court must review prisoner civil complaints and dismiss any portion of the complaint that is frivolous or malicious, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. Although detailed allegations are not required, the complaint must include sufficient facts to afford the defendants fair notice of the claims and the grounds upon which they are based and to demonstrate a right to relief. *Bell*

*Atlantic v. Twombly*, 550 U.S. 544, 555-56 (2007). Conclusory allegations are not sufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the [C]ourt to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 678 (citing *Bell Atlantic*, 550 U.S. at 556). Nevertheless, it is well-established that "[*p*]*ro se* complaints 'must be construed liberally and interpreted to raise the strongest arguments that they suggest.'" *Sykes v. Bank of America*, 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)); *see also Tracy v. Freshwater*, 623 F.3d 90, 101-02 (2d Cir. 2010) (discussing special rules of solicitude for *pro se* litigants).

II.  Factual Allegations

In July of 2018, Warden Erfe ordered that coolers of ice water be issued to the south block units at Cheshire because the air conditioner was not working. Compl. ¶ 1. At approximately 8:45 p.m. on July 28, the plaintiff reported to the medical line to receive his medications. *Id.* at ¶ 2. When he left the medical unit and proceed back to his housing unit, he decided to get a drink of water from the one of the coolers. *Id.* at ¶ 3. He entered his cell, retrieved a cup, and went to the cooler to obtain some water, but the cooler was empty. *Id.* at ¶ 4. Another inmate named Lewis had also attempted to get some water but could not do so. *Id.* Lewis and the plaintiff then lifted the cooler off the table and brought it to the correction officer's desk. *Id.* at ¶ 5.

On their way to the desk, Officer Rodriguez stopped the two inmates and ordered them to put the cooler back on the table. Compl. ¶ 6. When the plaintiff explained to

Rodriguez that the warden had issued the cooler for inmate use, Rodriguez dismissed him saying, "I said no, put it back." *Id.* The two inmates then placed the cooler back on the table, and the plaintiff asked Rodriguez to call a lieutenant to the area. *Id.* at ¶ 7. The plaintiff heard Rodriguez mutter "something like 'challenge my authority'" and then saw him make a phone call. *Id.* at ¶ 8.

Approximately a minute or so later, Lieutenant Marquis arrived in the unit. Compl. ¶ 9. The plaintiff tried to explain the situation to Marquis, but Marquis just told the plaintiff to sit down. *Id.* Rodriguez then told Marquis "about things that didn't happen" between him and the plaintiff. *Id.* at ¶ 10. Again, the plaintiff tried to interject, but Marquis told him to sit down. *Id.*

Shortly thereafter, the plaintiff caught out of the corner of his eye someone quietly walking toward him. Compl. ¶ 12. When he turned his head to see who the individual was, the plaintiff saw Marquis holding a can of chemical mace at his face. *Id.* The plaintiff raised his hands and attempted to tell Marquis that he has asthma, but Marquis sprayed him in his mouth and face. *Id.* at ¶ 13. Two other correction officers, John Does 1 and 2, then tackled the plaintiff to the floor. *Id.*

The plaintiff could not discern how many officers were on top of him, but it was definitely more than two. Compl. ¶ 14. While pinned to the floor, the plaintiff yelled that he was not resisting, but Marquis continued to spray mace into his mouth while the officers held him down. *Id.* The officers then placed handcuffs on the plaintiff, brought him to his feet, and proceeded to escort him to the restrictive housing unit ("RHU"). *Id.* at ¶ 15. The plaintiff starting yelling that he had only wanted water and asking why he had been pepper sprayed, but Does 1 and 2 applied more pressure to his handcuffs, which

caused him pain. *Id.* at ¶ 16. He continued to yell, "You'r[e] hurting me[!] Why did the [lieutenant] mace me? I only wanted water! You'[re] hurting my wrist[!] Stop!" Compl. ¶ 17. At that moment, his asthma acted up and he yelled that he could not breathe. *Id.*

When they arrived at the RHU, Marquis ordered Does 1 and 2 to strip search the plaintiff, and the officers complied. Compl. ¶ 18. The officers then placed the plaintiff in the RHU cell with in-cell "black box" restraints. *Id.* Nurse Jane Doe arrived shortly thereafter and examined the plaintiff's wrist, which was bruised and swollen. *Id.* at ¶ 19. She told the plaintiff that he would "be okay." *Id.* No photographs were taken of the plaintiff's injury. *Id.*

The plaintiff was kept in in-cell restraints for over twenty-four hours and confined in the RHU for ten days. Compl. ¶¶ 21, 24. He was never provided with any incident report regarding the use of force or his placement in the RHU. *Id.* at ¶ 23. Rodriguez later wrote the plaintiff a disciplinary ticket for "flagrant disobedience." *Id.* at ¶ 24.

On July 30 and September 5, the plaintiff filed grievances regarding the use of force on July 28, the latter of which was returned without disposition because the plaintiff did not seek informal resolution with the officers involved. Compl. ¶ 25. He also wrote a request to Warden Erfe and the deputy warden that they call the state police to report the assault, but he never received a response. *Id.* at ¶ 26. The plaintiff filed a freedom of information ("FOI") request for all reports made in connection with the July 28 incident, but to date, he has not received all the requested documents. *Id.* at ¶ 27.

In later September of 2018, the plaintiff stopped Warden Erfe in his housing unit and told him about the assault on July 28 and the tight handcuffs that caused him pain in

his wrist. Compl. ¶ 28. He added that he would like to use the telephone to call the state police about the assault. *Id.* Erfe responded that the plaintiff could write a letter to the state police. *Id.*

III. Analysis

The plaintiff claims that the defendants subjected him to unreasonable use of force or acted with deliberate indifference to his safety, in violation of his Fourth and Eighth Amendment rights. Compl. ¶¶ 29-33. Because the plaintiff is a convicted prisoner, and not a pretrial detainee or arrestee, his claims regarding the defendants' use of force and treatment of him after the alleged assault are analyzed under the Eighth Amendment, not the Fourth Amendment. *See Shakir v. Derby Police Department*, 284 F. Supp. 3d 165, 207-08 (D. Conn. 2018). After review of the allegations, the Court will permit the excessive force claim to proceed against Marquis, Doe 1, Doe 2, and Rodriguez but dismiss the claims against Nurse Doe and Warden Erfe.

"[T]he use of excessive physical force against a prisoner may constitute cruel and unusual punishment [even] when the inmate does not suffer serious injury." *Wilkins v. Gaddy*, 559 U.S. 34, 34 (2010) (quoting *Hudson v. McMillian*, 503 US. 1, 4 (1992)). To establish a claim of excessive force under the Eighth Amendment, the prisoner must satisfy a subjective and objective component. *See Sims v. Artuz*, 230 F.3d 14, 20-21 (2d Cir. 2000). The subjective component requires a showing that the official's use of physical force was "malicious[] and sadistic[] rather than as part of a good faith effort to maintain or restore discipline." *Wilkins*, 559 U.S. at 40 (quoting *Hudson*, 503 U.S. at 9). "The objective component . . . focuses on the harm done; but the amount of harm that must be shown depends on the nature of the claim." *Sims*, 230 F.3d at 21; *see also Banks*

5

*v. County of Westchester*, 168 F. Supp.3d 682, 688 (S.D.N.Y. 2016). Although some degree of injury ordinarily will be required; *Banks*, 168 F. Supp.3d at 688; the prisoner does not have to show that he sustained a significant injury in order to prevail on an excessive force claim. *Sims*, 230 F.3d at 22; *Wilkins*, 559 U.S. at 37. A prisoner sufficiently states an Eighth Amendment claim if he "alleges facts from which it could be inferred that prison officials subjected him to excessive force, and did so maliciously and sadistically . . . ." *Sims*, 230 F.3d at 22.

Similarly, to state a claim for deliberate indifference to safety, in violation of the Eighth Amendment, a prisoner must show that the alleged conduct was sufficiently serious and that the defendants acted with a sufficiently culpable state of mind, that is, that they acted maliciously and sadistically to cause harm. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994). The deliberate indifference standard "requires that 'the official know[] of and disregard[] an excessive risk to [the prisoner's] health or safety.'" *McClendon v. Maldonado*, No. 3:16-CV-2136 (SRU), 2017 WL 3821792, at *5 (D. Conn. Aug. 31, 2017) (quoting *Farmer*, 511 U.S. at 835). To determine whether a prisoner faced an excessive risk of serious harm, courts "look at the facts and circumstances of which the official was aware at the time he acted or failed to act." *Hartry v. County of Suffolk*, 755 F. Supp. 2d 422, 436 (E.D.N.Y. 2010) (internal quotation marks and citation omitted).

Construed liberally, the plaintiff's complaint states a plausible Eighth Amendment excessive force claim against Marquis, Doe 1, and Doe 2 for spraying him with mace and tackling him, despite his obedience. The facts alleged do not show any justification for the officers' use of force. Although it is not entirely clear from the allegations whether

6

Rodriguez participated in the assault, it appears that he was present during the assault and failed to intervene. Thus, the Court will permit the Eighth Amendment claim to proceed against Marquis, Doe 1, Doe 2, and Rodriguez.

The plaintiff has not, however, stated a plausible Eighth Amendment claim against Nurse Doe or Warden Erfe. His only allegation against Nurse Doe is that she failed to treat him after observing his bruised and swollen wrist. Compl. ¶ 19. Doe allegedly observed his wrist and concluded that he would "be okay." *Id.* This allegation, alone, does not show that Nurse Doe disregarded an excessive risk to the plaintiff's safety or well-being. As for Erfe, the plaintiff's claim is based on the refusal to "investigat[e]" the assault, punish the officers involved, or allow the plaintiff to call the state police to report the assault. Compl. ¶ 32. However, there are no allegations that Erfe refused to investigate the incident. Although he refused to let the plaintiff call the police to report the assault, he informed that he could write to them and explain what happened. Compl. ¶ 28. There are insufficient facts that Erfe acted with deliberate indifference to the plaintiff's safety. Therefore, the claims against Nurse Doe and Erfe are dismissed.

For relief, the plaintiff seeks monetary damages and three forms of injunctive relief: (1) an order compelling Warden Erfe to disclose the full names of all other defendants in this case; (2) an order compelling Erfe to order his FOI liaison, Correction Officer McMahon, to provide him with all of the documents related to the incident; and (3) an order compelling all defendants to disclose their home addresses to permit proper service of the complaint. Compl. at 4. Aside from the fact that the plaintiff has failed to state a plausible claim against Erfe, it is his responsibility as the individual bringing the action to provide the identities of the defendants for proper service and conduct his own

7

discovery. Once the defendants have appeared in this case and responded to the complaint, the plaintiff should consult with defense counsel regarding the discovery of any information related to the claims in this case. As for his third request, there is no need for the defendants to provide their home addresses because the plaintiff has been granted *in forma pauperis* status, and as shown below, the clerk's office will effect service on the defendants. Based on the foregoing, the plaintiff's request for injunctive relief is dismissed. Because the plaintiff may not recover damages against state officials in their official capacities; *see Kentucky v. Graham*, 473 U.S. 159, 169 (1985); the claims may only proceed against the defendants in their individual capacities.

## ORDERS

(1) The Eighth Amendment claim for excessive force may proceed against Marquis, Rodriguez, Doe 1, and Doe 2 in their individual capacities for damages. All other claims are dismissed. The clerk is directed to terminate Nurse Doe and Warden Erfe as defendants to this action.

(2) The Clerk shall verify the current work addresses for Marquis and Rodriguez with the DOC Office of Legal Affairs, mail a waiver of service of process request packet containing the complaint (ECF No. 1) to them at the confirmed addresses within **twenty-one (21) days** of this Order, and report to the Court on the status of the waiver requests on the **thirty-fifth (35th) day** after mailing. If either defendant fails to return the waiver request, the Clerk shall make arrangements for in-person service by the U.S. Marshals Service on him, and he shall be required to pay the costs of such service in accordance with Federal Rule of Civil Procedure 4(d).

(3) The Clerk shall send a courtesy copy of the complaint and this Order to the

DOC Office of Legal Affairs.

(4) Because the plaintiff has not identified John Does 1 and 2 by name, the Clerk is not able to serve a copy of the complaint on those defendants in their individual capacities. Within **ninety (90) days** from the date of this Order, the plaintiff shall file a notice indicating the first and last name of John Does 1 and 2. If the plaintiff files the notice, the Court will direct the Clerk to effect service of the complaint on those defendants in their individual capacities. If the plaintiff fails to identify John Does 1 and 2 within the time specified, the claims against those defendants will be dismissed.

(5) Marquis and Rodriguez shall file their response to the complaint, either an answer or motion to dismiss, within **sixty (60) days** from the date the notice of lawsuit and waiver of service of summons forms are mailed to them. If they choose to file an answer, they shall admit or deny the allegations and respond to the cognizable claims recited above. They may also include any and all additional defenses permitted by the Federal Rules.

(6) Discovery, pursuant to Fed. R. Civ. P. 26-37, shall be completed within **six months (180 days)** from the date of this order. Discovery requests need not be filed with the Court.

(7) All motions for summary judgment shall be filed within **seven months (210 days)** from the date of this order.

(8) Pursuant to Local Civil Rule 7(a), a nonmoving party must respond to a dispositive motion within **twenty-one (21) days** of the date the motion was filed. If no response is filed, or the response is not timely, the dispositive motion can be granted absent objection.

(9) If the plaintiff changes his address at any time during the litigation of this case, Local Court Rule 83.1(c)2 provides that the plaintiff MUST notify the court. Failure to do so can result in the dismissal of the case. The plaintiff must give notice of a new address even if he is incarcerated. The plaintiff should write "PLEASE NOTE MY NEW ADDRESS" on the notice. It is not enough to just put the new address on a letter without indicating that it is a new address.

It is so ordered.

Dated at Hartford, Connecticut this 10th day of January 2019.

/s/ MICHAEL P. SHEA
Michael P. Shea
United States District Judge